IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EVERETT LEONARD GIVENS | : | |
| | : | |
| v. | : | Civil No. CCB-04-731 |
| | : | |
| PRIME OFFICE PRODUCTS | : | |
| | : | |

# MEMORANDUM

Now pending before the court is defendant's motion for summary judgment. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, the defendant's motion will be granted.

# BACKGROUND

Plaintiff Everett Givens ("Givens") is a 52-year old African-American male. Givens was employed as a truck driver for defendant Prime Office Products ("Prime"), a Baltimore based company in the business of selling and delivering office supplies. Givens's primary duty while employed at Prime was to make deliveries to Prime's Baltimore customers. As with other Prime drivers, Givens's route stayed substantially the same over his tenure at Prime. (*See* Def's Declaration of Terry Walker at ¶ 10.) Prime contends that the routes are designed to be completed within an eight-hour day, although they can occasionally take longer to complete. Givens, however, had to be warned about his failures to complete his route within eight hours. (*See* Mot. for Summ. J., Exhibit 5, Pl's Response to Request for Admissions [hereinafter "PRRFA"] at ¶ 16.) His failure to complete his route in a timely manner led to disciplinary

action, including suspension and being placed on probation at least twice.  (*See* Mot. for Summ. J., Exhibit 5, PRRFA at ¶¶ 9, 15, 21.) Givens was also warned repeatedly about his history of problems making timely and accurate deliveries, errors Prime contends cost the company money in the form of $50 payments to customers whose deliveries were late, and created the risk of losing customers. (*See* Mot. for Summ. J., Exhibit 5, PRRFA at ¶¶ 9, 11, 13, 14, 15, 20, 21.) Moreover, when he did miss a delivery, he sometimes failed to notify his supervisor immediately, as required under Prime's policy. (*See* Def's Declaration of Laura Bell, Exhibit B, Summary of 1/24/03 discussion.)  Additionally, Prime received customer complaints about Givens, including accounts of his negative attitude toward customers. (*See* Def's Declaration of John Wallace, Exhibits E and F.)

Prime also requires its drivers to maintain a satisfactory driving record. (*See* Def's Declaration of Laura Bell, Exhibit M, Driver Discharge Policy.)  A driver may be discharged for having too many traffic violations within a certain period of time, or for being involved in any major violation. (*See Id.*)  In addition to the aforementioned performance concerns, Givens also received several driving violations.  In February and April of 2001, as well as in June of 2002, he received traffic tickets for running a red light while operating a Prime delivery truck.  (*See* Def's Declaration of Laura Bell, Exhibits I, J, and K.)  In November and August of 2000 he was ticketed for speeding while driving his own personal vehicle. (*See* Def's Declaration of Laura Bell, Exhibit H.)  In another incident, Prime received reports–reports which Givens does not dispute--that Givens was driving his delivery truck the wrong way on a one way street. (*See* Def's Declaration of John Wallace, Exhibit D; Mot. for Summ. J., Exhibit 5, PRRFA at ¶ 17.)  Finally, Givens also caused damage to a Prime delivery truck by running into a pole, and was involved in a collision with another vehicle while changing lanes in his delivery truck. (*See*

Def's Declaration of John Wallace, Exhibit I and K; Mot. for Summ. J., Exhibit 5, PRRFA at ¶ 12.)

Prime terminated Givens on January 27, 2003. On January 24, 2003, during a period in which he was on probation due to his earlier poor performance, he missed a delivery and is alleged to have failed to notify his supervisor immediately. (*See* Def's Declaration of Laura Bell, Exhibit H.) While the January 24, 2003 incident was the final triggering event, Prime cites multiple reasons that would justify Givens's termination. Among the most significant, according to Prime, are his failure to improve his job performance despite numerous verbal and written warnings, his refusal to follow orders and established company procedure, his poor driving record with over four traffic violations within a two-year period, an excessive number of customer complaints, and various other performance related issues documented in his personnel file. (*See* Mot. for Summ. J. at 8.)

Although there is no record of Givens complaining of race or age discrimination over his years at Prime, Givens now contends that his termination, as well as Prime's refusal to promote him, were the result of discrimination against him because he is African-American and because of his age.[1] He first made this allegation in a complaint to the Baltimore Community Relations Committee ("CRC") in February 2003. Neither his complaint to the CRC, nor his unsuccessful appeal of the CRC's rejection thereof, nor his report to the Equal Opportunity Employment Commission ("EEOC"),[2] contained any allegations that he had been called a "nigger" by a co-

---

[1] Givens brings these claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and under the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621.

[2] Under an arrangement between the CRC and the EEOC, complaints received by the CRC are sent to the EEOC for dual filing purposes. (*See* Motion for Summ. J., Exhibit 2, Charge of Discrimination.)

worker, and an "old man" by a Prime official. (*See* Mot. for Summ. J., Exhibit 5, PRRFA at ¶¶ 1-4.) Givens has alleged in this suit, however, that he was called "nigger" by a co-worker, and that it was overheard by a Prime official but never acted upon. He also alleges, for the first time in this suit, that he was called an "old man" by a Prime official. Additionally, in support of his claims, Givens contends that Prime never employed an African-American in management or as a supervisor, that the only two drivers that ever had to make deliveries beyond Baltimore were African-American, that his own route was the most difficult of any driver, and that Prime refused to grant his requests for help, while ordering drivers to help other white drivers. Additionally, Givens contests that he failed to place a call to his supervisor to inform him of the missed delivery on January 24, 2003.

## ANALYSIS

### A.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**B.**

With the goal of "progressively...sharpen[ing] the inquiry into the elusive factual question of intentional discrimination," *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, n. 8 (1981), the Supreme Court's opinion in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), established the now well known allocation of the burden of production and an order for the presentation of proof in Title VII and ADEA discriminatory treatment cases. The plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).[3] If the prima

---

[3] To establish a prima facie case of discriminatory denial of promotion, the plaintiff ordinarily must show that: (1) he is a member of a protected group; (2) the defendant had an open position for which the plaintiff applied; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of discrimination. *See Janey v. N. Hess Sons, Inc.*, 268 F.Supp.2d 616, 621-22 (D.Md. 2003)(citing *Evans v. Technologies Applications and Serv., Co.*, 80 F.3d 954, 959-60 (4th Cir.1996)). To establish a prima facie case of discriminatory discharge, the plaintiff ordinarily must show that: (1) he is a member of the protected class; (2) he was qualified for the job and met the employer's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by someone with comparable qualifications outside the protected class or his position remained open to similarly qualified applicants after his

facie case is established, the burden then shifts to the employer to produce evidence that the employment decision was made for legitimate, nondiscriminatory reasons. *See Burdine*, 450 U.S. at 254. Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See St. Mary's Honor Center*, 509 U.S. at 507-508. The prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated, but may not always be adequate to sustain a jury's finding of liability. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory."). Flexible enough to be adapted for the circumstances of the allegations, this general framework applies to both discharge and failure to promote cases, as well as to both Title VII and ADEA claims. *See Reeves*, 530 U.S. at 142 (applying framework to an ADEA claim).

With this framework in mind, the court takes up Givens's claims of discrimination. For the following reasons, summary judgment is appropriate and those claims must fail.

**C.**

Givens has failed to put forth credible evidence raising any genuine factual issue that

---

termination. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); s*ee also Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998); *cf. Miles v. Dell Inc.*, 2005 WL 3111917, *3 (4th Cir. 2005)(holding that, "in appropriate cases, a Title VII plaintiff can make out a prima facie case without satisfying prong four.")

would be material to resolving this dispute.  First, and fatally, he has failed to make out a prima facie case under either Title VII or the ADEA for discriminatory discharge or failure to promote. Significantly, he failed to make even a minimal showing that he was qualified for the job and "met his employer's legitimate expectations." *King*, 328 F.3d at 149.  Givens's argument could be construed as contesting the legitimacy of some of his employer's expectations, primarily the reasonableness of his route.  (*See* Mot. for Summ. J., Exhibit 5, PRRFA at ¶¶ 15, 16.) This court has an affirmative obligation to prevent factually unsupported claims from proceeding to trial, however, *see Bouchat*, 346 F.3d at 526, and Givens has not presented sufficient evidence to back up his claims relating to his route.[4]  Further, even if his route was shown to be more difficult to complete than others, Prime has put forth a considerable body of evidence showing that Givens was far from meeting their legitimate expectations in other areas.  Givens has not even made assertions, much less put forth evidence, sufficient to refute it.  Even under the relatively low burden of making out a prima facie case, Givens has not shown that he was discharged despite his qualifications and performance. *See, e.g., King*, 328 F.3d at 149.  Moreover, as to the failure to promote claim, there is nothing in the record to show that there was an open position for

---

[4] In support of his contention that his route was uniquely and unreasonably difficult to complete in a timely fashion, Givens has submitted his own affidavit, as well as an affidavit from Jerry Frye, a former employee of Prime who took over Givens's route after his termination. (*See* Pl's Opp'n to Mot. for Summ. J, Exhibit C, Declarations of Givens and Frye.) Both affidavits, one being from the plaintiff himself, merely assert that the route was the most difficult. Moreover, the affidavits submitted offer no evidence to suggest, nor does Mr. Frye even assert, that the assignment of that route to Givens was based on his race or age. *See Anderson*, 477 U.S. at 249 ("...evidence that is "merely colorable" or "not significantly probative," will [not] suffice to defeat a motion for summary judgment."). Givens does, in his opposition to the motion for summary judgment, assert that, "all of the more difficult routes were given to the black drivers." However, it is axiomatic that a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings." Fed.R.Civ.P. 56(e). And further, Givens's difficulty in completing his route is but one element in Prime's articulated justification for his termination.

which Givens applied.[5]

Finally, even had Givens been able to make out a prima facie case for any of his claims, Prime clearly has produced sufficient evidence to support a nondiscriminatory explanation for its decision. Prime's contention that Givens was discharged based on his performance and failure to improve is well supported by evidence admissible at trial. Additionally, Givens has not answered with any evidence sufficient to prove by a preponderance of the evidence that the legitimate reasons offered by Prime were merely a pretext for discrimination. *See St. Mary's Honor Center*, 509 U.S. at 507-508. Moreover, aside from failing to show pretext, Givens has put nothing in the record that would raise any inference that Prime's actions were discriminatory. Therefore, even if Prime's explanations appeared questionable, which they do not, this may be the case in which "no rational fact-finder could conclude that the action was discriminatory," in any event. *See Reeves*, 530 U.S. at 142 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory.").[6]

---

[5] Givens does assert in his complaint that he was never offered a supervisory position and that a white worker was promoted over him, but he offers no evidence of ever applying for a specific position or promotion.

[6] Also before the court is plaintiff's motion to compel, raising a multitude of detailed complaints about defendant's individual discovery responses. It will be denied. The court finds that, in many circumstances, the defendant has in fact adequately responded to plaintiff's requests. In other cases, defendant's objections to the requests as overly broad and/or irrelevant have merit. In any event, the court finds that the information sought could have no possible legal effect on the outcome here. The central outstanding issue is the plaintiff's dissatisfaction with defendant's production of documents and information in regard to both other employees of Prime and Prime's parent company. Nothing that could reasonably be revealed from these requests would change the court's finding that Givens failed to make even a minimal showing that he was qualified for the job and met the employer's legitimate expectations, that he thus failed to establish a prima facie case of discrimination, and that he failed to offer any evidence of

Based on the foregoing, the defendant's motion for summary judgment will be granted. In light of this ruling, the defendant's motion to compel and for sanctions, which appeared to involve prior counsel, also will be denied.

A separate Order follows.

   November 29, 2005                               /s/   
        Date                                  Catherine C. Blake
                                            United States District Judge

---

pretext.